## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| SynQor, Inc.<br><br>    Plaintiff,<br><br>v.<br><br>Cisco Systems, Inc.<br><br>    Defendant. | Civil Action No. 2:13-cv-232<br><br>**JURY TRIAL DEMANDED** |

### SYNQOR'S COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SynQor, Inc. ("SynQor") for its complaint against Defendant Cisco Systems, Inc. ("Cisco") alleges the following:

### THE PARTIES

1.    Plaintiff SynQor is a Delaware corporation having a principal place of business at 155 Swanson Road, Boxborough, Massachusetts 01719.  SynQor is a leader in the design, development, manufacture, and sale of innovative DC/DC power converters and AC/DC power conversion solutions to the communications, computing, industrial, medical, and military markets.

2.    On information and belief, Defendant Cisco is a California corporation with its principal place of business at 170 West Tasman Drive in San Jose, California 95134.  Defendant Cisco makes, imports, uses, offers to sell, and/or sells within the United States, including the state of Texas and this judicial district, products incorporating bus converters and non-isolated, regulated converters (now known as "POLs") used in intermediate bus architecture power supply systems.

## JURISDICTION AND VENUE

3.  This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4.  Defendant Cisco is conducting business on a systematic and continuous basis within the United States, including the state of Texas and this judicial district.

5.  On information and belief, Defendant Cisco makes, imports, uses, offers to sell, and/or sells within the United States, including the state of Texas and this judicial district, products incorporating bus converters and/or products incorporating bus converters with POLs in intermediate bus architecture power supply systems which infringe the patents at issue in this action.  On information and belief, Cisco's suppliers of the bus converters it incorporates into its products include without limitation Bel Fuse, Inc. ("Bel Fuse"), Delta Electronics, Inc. ("Delta Electronics"), Murata Power Solutions, Inc. ("Murata Power Solutions"), and Power-One, Inc. ("Power-One").

6.  Defendant is subject to personal jurisdiction in this judicial district because it has established minimum contacts with the forum such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice and has committed acts of infringement in this judicial district.

7.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400(b).

## GENERAL ALLEGATIONS

8.  SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 7,787,261 ("the '261 patent"), entitled "Intermediate Bus Architecture With A Quasi-

Regulated Bus Converter."  The '261 patent was duly and legally issued on Aug. 31, 2010, by the United States Patent and Trademark Office.  A true and correct copy of the '261 patent is attached hereto as Exhibit 1.

9. SynQor is the assignee and owner of all rights, title, and interest in U.S. Patent No. 8,149,597 ("the '597 patent"), entitled "Intermediate Bus Architecture With A Quasi-Regulated Bus Converter."  The '597 patent was duly and legally issued on Apr. 3, 2012, by the United States Patent and Trademark Office.  A true and correct copy of the '597 patent is attached hereto as Exhibit 2.

10. After SynQor first taught Cisco about using unregulated bus converters in an unregulated intermediate bus architecture, Cisco went on to widely adopt this approach in its products.  Cisco also adopted SynQor's modified approach using semi-regulated bus converters which became known as semi-regulated intermediate bus architecture.  From July 2006 to December 2010, Cisco bought unregulated and semi-regulated bus converters from suppliers such as Astec America, Inc., Bel Fuse, Delta Electronics, Lineage Power Corp., Murata Power Solutions, and Power-One for use in unregulated and semi-regulated intermediate bus architecture systems in Cisco's products.  SynQor sued these suppliers, and others, in November 2007 for infringing SynQor's patents related to unregulated and semi-regulated intermediate bus architecture in Case No. 2:07-cv-497 (E.D. Tex.) ("the '497 case").

11. In December 2010, after three years of litigation, SynQor presented its claims to a jury.  The jury in the '497 case found that the defendants had infringed SynQor's patents by, among other things, inducing and contributing to direct infringement by their customers, including Cisco.  Cisco was by far the largest direct infringer at issue in the '497 case, accounting

for nearly half of the unregulated and semi-regulated bus converter sales addressed at trial. The jury awarded more than $95 million in damages. *See* '497 case, Dkt. 889.

12. The jury's award against the '497 defendants, along with other supplemental damages and sanctions awarded in the '497 case, were ultimately affirmed in full by the Federal Circuit on March 13, 2013.

13. After the jury's verdict in the '497 case, SynQor asked the Court to enjoin the '497 defendants and those acting in concert with them from continuing to infringe SynQor's patents. In response, the '497 defendants did not contest that an injunction was appropriate but instead sought a transition period for, among others, Cisco, during which the '497 defendants and Cisco claimed that they would develop purportedly fully-regulated and non-infringing replacement bus converters for the unregulated and semi-regulated bus converters Cisco was currently using. *See, e.g.* '497 case, Dkt. 931 at 15. During an evidentiary hearing on SynQor's motion for a permanent injunction, Cisco representatives testified that they would complete the process of qualifying purportedly fully-regulated converters by the end of September 2011. Ex. 3, 1/19/2011 Tr. at 111:6-9; 111:20-23; 121:24-122:13; 134:7-8; 150:11-18; 187:22-188:1. One of Cisco's lawyers later told the Court "we went to fully regulated converters much more quickly and that's what we are using today." Ex. 4, 5/3/2012 Hr. Tr. at 72:13-15.

14. It turns out, however, that Cisco did not replace all the bus converters found to infringe in the '497 case with fully-regulated, much less non-infringing, bus converters. Instead, Cisco worked with its suppliers to design and qualify many replacement bus converters that are unregulated within at least a portion of their intended operating range. These replacement converters have both an unregulated/non-regulated mode and a regulated mode of operation in their intended operating range.

15. Through a subpoena in the case that was severed from the '497 case, Case No. 2:11-cv-444 (E.D. Tex.) ("'444 case"), SynQor pursued discovery from Cisco regarding these products, as well as through discovery in its case against Cisco, Case No. 2:11-cv-54 (E.D. Tex.) ("'54 case"). Cisco resisted SynQor's efforts to obtain information regarding these products until SynQor finally obtained non-confidential samples of these products in late January 2013 and was able to test them to first identify the unregulated mode of operation. Given Cisco's discovery delays, SynQor did not know of the infringing nature of these purported "fully regulated" replacements until the samples were finally provided and tested.

16. Many of the replacement bus converters infringe the '261 and '597 patents asserted here when made, used, sold, offered for sale, or imported into the United States.

17. On information and belief, Cisco and its attorneys have known that these replacements bus converters would be infringing. On information and belief, Cisco would have learned through its qualification process and through working with its suppliers regarding the designs for the replacement converters that these products are unregulated within at least a portion of their intended operating range and that they have both unregulated and regulated modes of operation within at least portions of their intended operating range. Cisco has long been aware of SynQor's patents from the '497 case and, on information and belief, has also long been aware of the '261 and '597 patents asserted here. SynQor marks these patents on its datasheets and products. Cisco has been actively involved in litigation against SynQor, relying on numerous lawyers from at least two large law firms as Cisco tried to avoid the permanent injunction in the '497 case, respond to SynQor's motion for sanctions in the '444 case, and respond to SynQor's claims in the '54 case. Thus, on information and belief, Cisco learned of SynQor's '261 and '597 patents but nevertheless proceeded to make, use, sell, offer for sale

and/or import products containing replacement bus converters and/or products containing replacement bus converters with POLs in intermediate bus architecture power supply systems that infringe the '261 and/or '597 patents.

## COUNT ONE
### Cisco's Infringement of the '261 Patent

18. Each of the foregoing paragraphs is incorporated by reference.

19. Cisco has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '261 patent pursuant to 35 U.S.C. § 271.  The infringing acts include, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products incorporating replacement bus converters such as but not limited to the Bel Fuse 0RRE-32S10, Bel Fuse 0RRM-50S10, Bel Fuse 0RRQ-45M11, Bel Fuse 0RRQ-50V10, Delta Q48SK9R637, Murata Power Solutions RBQ-31250, Murata Power Solutions RBQ-8.5/45-L48NBL2, Murata Power Solutions RBQ-9.6/50-L48NBL2, Murata Power Solutions RBQ-10.8/50-L54NBL2, Power-One QTR52T50096, and/or products incorporating such replacement bus converters with POLs (including those built into Cisco's load board) in intermediate bus architecture power supply systems.  In addition, Cisco's customers and/or Cisco's contract manufacturers and/or direct fulfillment ("DF") facilities infringe the '261 patent when they engage in any of the infringing acts noted above with respect to the accused products.  Cisco induces infringement and/or contributes to infringement by its customers when, for example, Cisco sells and/or causes to be sold to its customers accused products that infringe the '261 patent with the knowledge and intent that its customers will use the accused products.  Cisco induces infringement and/or contributes to infringement by its contract manufacturers and/or DF facilities when, for example, it directs its contract manufacturers and/or DF facilities to manufacture, use, sell, or import accused products that infringe the '261 patent with the

knowledge and intent that its contract manufacturers and/or DF facilities will manufacture, use, sell, or import accused products.

20. Accused replacement bus converters and products incorporating replacement bus converters with POLs in intermediate bus architecture power supply systems which practice the claims of the '261 patent, are known by Cisco to be especially made or adapted for use in an infringement of the '261 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

21. Cisco's past and continued acts of infringement of the '261 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

22. Cisco's infringement of SynQor's exclusive rights under the '261 patent has and will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Cisco is enjoined by this Court from further infringement.

23. On information and belief, Cisco has long been on notice of the '261 patent. Accordingly, Cisco's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT TWO
### Cisco's Infringement of the '597 Patent

24. Each of the foregoing paragraphs is incorporated by reference.

25. Cisco has been and is now directly infringing, actively inducing infringement of, and/or contributorily infringing the '597 patent pursuant to 35 U.S.C. § 271. The infringing acts include, but are not limited to, the manufacture, use, promotion, sale, importation, and/or offer for sale of products incorporating replacement bus converters such as but not limited to the Bel

Fuse 0RRE-32S10, Bel Fuse 0RRM-50S10, Bel Fuse 0RRQ-45M11, Bel Fuse 0RRQ-50V10, Delta Q48SK9R637, Murata Power Solutions RBQ-31250, Murata Power Solutions RBQ-8.5/45-L48NBL2, Murata Power Solutions RBQ-9.6/50-L48NBL2, Murata Power Solutions RBQ-10.8/50-L54NBL2, Power-One QTR52T50096, and/or products incorporating such replacement bus converters with POLs (including those built into Cisco's load board) in intermediate bus architecture power supply systems. In addition, Cisco's customers and/or Cisco's contract manufacturers and/or DF facilities infringe the '597 patent when they engage in any of the infringing acts noted above with respect to the accused products. Cisco induces infringement and/or contributes to infringement by its customers when, for example, Cisco sells and/or causes to be sold to its customers accused products that infringe the '597 patent with the knowledge and intent that its customers will use the accused products. Cisco induces infringement and/or contributes to infringement by its contract manufacturers and/or DF facilities when, for example, it directs its contract manufacturers and/or DF facilities to manufacture, use, sell, or import accused products that infringe the '597 patent with the knowledge and intent that its contract manufacturers and/or DF facilities will manufacture, use, sell, or import accused products.

26. Accused replacement bus converters and products incorporating replacement bus converters with POLs in intermediate bus architecture power supply systems which practice the claims of the '597 patent, are known by Cisco to be especially made or adapted for use in an infringement of the '597 patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing uses.

27. Cisco's past and continued acts of infringement of the '597 patent have injured SynQor and thus SynQor is entitled to recover compensatory damages for the infringement in an amount subject to proof at trial.

28. Cisco's infringement of SynQor's exclusive rights under the '597 patent has and will continue to damage SynQor's business, causing irreparable injury to SynQor, for which there is no adequate remedy at law, unless Cisco is enjoined by this Court from further infringement.

29. On information and belief, Cisco has long been on notice of the '597 patent. Accordingly, Cisco's infringement of the patents-in-suit has been and/or will continue to be willful and deliberate. This entitles SynQor to increased damages under 35 U.S.C. § 284 and to attorney's fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **REQUEST FOR RELIEF**

Wherefore, SynQor respectfully requests that the Court:

A. order trial by jury on all issues so triable;

B. render judgment finding that Cisco has infringed, directly, by inducement and/or contributorily, the '261 and '597 patents;

C. find that Cisco's infringement was willful;

D. issue a permanent injunction preventing Cisco, and those in active concert with Cisco, from further infringement, inducement of infringement, or contributory infringement of the '261 and '597 patents;

E. award compensatory damages in an amount to be determined at trial;

F. award enhanced damages up to and including treble damages pursuant to 35 U.S.C. § 284;

G. award interest as allowed by law;

      H.      award an accounting and/or supplemental damages for any damages not addressed at trial and any post-trial damages;

      I.      declare that this case is exceptional pursuant to 35 U.S.C. § 285, award costs and reasonable attorney fees incurred in connection with this action; and

      J.      grant such other and further relief as the Court and the jury deem just and proper.

Dated: March 22, 2013

*/s/ David T. DeZern*

**Michael D. Hatcher**
Texas State Bar No. 24027067
mhatcher@sidley.com
**David T. DeZern**
Texas State Bar No. 24059677
ddezern@sidley.com
SIDLEY AUSTIN LLP
717 North Harwood, Suite 3400
Dallas, TX 75201
Telephone:	214.981.3300
Facsimile:	214.981.3400

**Thomas D. Rein**
Lead Attorney
*Pro Hac Vice Application To Be Filed*
trein@sidley.com
**Russell E. Cass**
*Pro Hac Vice Application To Be Filed*
rcass@sidley.com
**Stephanie P. Koh**
*Pro Hac Vice Application To Be Filed*
skoh@sidley.com
**Bryan C. Mulder**
*Pro Hac Vice Application To Be Filed*
bmulder@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone:	312.853.7000
Facsimile:	312.853.7036